May it please the court. George Poisson on behalf of Mr. Walker. In this case, because of the cumulative errors, a biased juror, Juror McCullough, was allowed to sit on the jury. And that is a violation of the Sixth Amendment, Mr. Walker's right to a fair trial, because one biased juror is enough to warrant reversal in this case. And it's clear in this case that Juror McCullough. Just a minute, counsel. What's the standard of review that I have here? Abuse of discretion. Okay. And when we're dealing with the missed trial, based on juror conduct and juror questions, that abuse of discretion is a little higher, isn't it not? I'm supposed to be extremely deferential and should be overturned only for manifest error. Yes, Your Honor. Especially when the judge goes out and tries to do what he can in order to make sure that he does not sit a juror who has already decided in a particular case. Isn't that what U.S. v. Armstrong says? Give the trial – give credit to the old trial judge when he tries to ferret out the truth? Well, yes, Your Honor. I mean, being an old trial judge, I like that case. Well, not so old. Let me ask you, what juror are you talking about who is biased? Juror McCullough. When it was removed? Only one. No, she wasn't removed. Judge Shaliff, the juror Shaliff was removed. Right. But how this came about. Yeah, okay. Just tell us a little bit more about what the conversation was between Shaliff and McCullough, that you say biased McCullough. Well, the problem, the conversation was that because of the facts in the indictment that this was a slam-dunk case. And that was a discussion that, you know, that at least Juror Mason overheard these jurors talk about. Now, what happened was – While they were sitting on the bench. While they were sitting in the jury box. Well, actually, this is what happened outside. Because what happened in this case was during the voir dire, jurors were leaving. Were leaving the courtroom without permission. The judge had a recess without giving the admonition, which was an error in itself because the jurors weren't instructed as they couldn't discuss the case among themselves or make judgments on the case. So the two jurors went back in and there was discussion among multiple jurors regarding the facts that had been read in the jury in the indictment. So the issue, according to these jurors, these were facts that they were – that they could consider. In fact, the juror that wasn't dismissed, the basis of saying that she's biased, is that even though she went through the colloquy with the district court judge, Judge that the indictment contained facts. In fact, her last statement that she made to the judge said, well, yes, I'm willing to listen to more facts. So she still believed that the indictment contained facts and she could consider those, which was – which is not accurate. But since the – Were you there? No, I wasn't there. All right. I wasn't there. So you're reading it just like I am? You're reading the record just like I am? Yes, I'm reading the record. Yeah. And so you're suggesting that I can read this record and absolutely ascertain, giving full deference to the district judge who's out there trying to make the questions to determine whether he ought to do this, that this is an abuse of discretion, just reading the record? Yes. I believe just reading the record. If I disagree, then I – then that's where we go. Well, even if this Court disagrees on this juror – What do I have there in that record which would suggest it's absolutely an abuse? Well, this is a mistrial motion that counsel made. I understand what it is. So we do have cumulative error in this particular case. One of the things that we have in this is that the judge, contrary to its established precedent in all the cases that have decided this, did not give an admonition to the jury to not discuss the case among themselves. And that was the very problem. So would you just – would you just explain to us the basis for your statement that the juror you say was biased was biased? Yes. That would be the – Who sat and heard the evidence. Yes. That would be the fact that when she was in her closing, when she said she could be fair, she said, yes, I will be able to listen to the facts, more facts as presented to the – you know, as we hear more facts. So she still believed that the facts that were given to her in the indictment were indeed facts, and she was willing to listen to more facts, but she wasn't – she wasn't advised that the indictment is not evidence. You can't consider that for any purpose when – during this questioning. And that was – and they weren't – they weren't given that. Even the admonition that was eventually given by the district court didn't talk about not to consider the indictment as facts of anything. It was on page 169. And they – the admonition, you – and I know you haven't heard any of the evidence yet. You basically heard us alluding to it by way of the indictment. Now, that's confusing in itself. I mean, instead of a clear admonition that indictment is not evidence, this is suggesting that the evidence is contained in the indictment. Well, those are things that the judge said. Yes. Okay. But what is – what is the basis for saying – because – for saying that this juror was biased as a result of what happened outside? If we – if we look at the – one aspect of bias. One aspect of bias is saying that a juror is not going to follow the instructions of the court or is going to make a decision based on some evidence that's not presented at time of trial. The issue of her considering facts in the indictment as facts and never being dissuaded that is evidence of bias. But there is more to this than just that, because it's clear that the jurors engaged in misconduct when they went outside and discussed the facts or the indictment of the case, made decisions on the guilt and innocence of the defendant. That's in itself is – is juror misconduct. Now, the problem is no one addressed that issue at that point in time because the judge had failed to give the admonition to the jury not to discuss the case. I understand that. But what about the colloquy that's at page 226 through 228 of the – of the appendix here where the judge has an extensive dialogue with this juror and – and concludes – and the juror says, and the judge asks, as you sit here now, are you of the mind that the defendant is guilty, or are you able to comfortably discharge your duty and presume that he's innocent until the government has proven his guilt? I'm here. Now that I've been sworn in as a juror, I'm going to find it very interesting to learn more facts about the case and the whole process involved. So I'm not set in one direction or the other. I can honestly say that. That alone, it seems to me, is enough for the judge to – to rely on and – and if – and – and also the judge is observing this – this juror in the – in the process of questioning her. Isn't that – doesn't that make your – your job a little more difficult when he says that the judge accepts that? Well, it – it – taken in isolation in this – even this statement, taken in isolation without the rest of the colloquy, where she evidences a – a real confusion regarding the facts of the case versus evidence and versus the – how to consider the indictment. The way the indictment was phrased was in terms of – it was declarative sentences as to what happened, as opposed to lots of alleges or accuses or, you know, that kind of thing. And that's what they got confused about. Well, the indictment generally is read. But the problem is that generally it comes with the admonition by the – the judge that don't consider this evidence. Don't – this is not evidence. This is just a manner of accusation. This is – this is accusation. And during this colloquy, that is never said to this juror. So in the end, what this juror – the final statement is – well, the second statement, and just before she leaves, I'm going to find it very interesting to learn more facts about the case and the whole process involved. So before any evidence is introduced at the time of trial, and the only thing they have is a reading of the indictment, she thinks it's facts. So she's thinking, well, I'm going to learn more facts. So right there, she has evidenced a bias to believe that the – the indictment is evidence. And she's never been dissuaded from that. And if you – and if you – with the cumulative effect of not being admonished prior to going out on a break, having jurors leave during the process, during the voir dire, and then in the end having jurors talk among themselves and discuss the case and make indecisions, which would be a clear violation, had there been an admonishment, which is probably still a clear violation, then this is error and the mistrial motion should have been granted. And so I'd like to reserve my eight seconds. Thank you. Well, you frankly don't have eight. You've gone eight over. We'll give you eight seconds. If you have anything that you really want to tell us briefly. Okay. Good morning. My name is Nicholas Marsh. I'm with the U.S. Department of Justice Public Integrity Section on behalf of the government. May it please the Court, I'd like to first respond to some of the statements made by Mr. Boasso concerning Juror McCullough. And before addressing the legal arguments, I did want to point out that there were two – certainly with respect to how Juror Califf, the excused juror, fits into this. There were two conversations that Juror Califf was a part of. Mr. Boasso mentioned the one with Juror Mason. That's not the one that Juror McCullough was involved in. You'll find that in Excerpts 176 to 179. Juror Mason told the judge that he, during the break, had heard Juror Califf make some pretty prejudicial statements. What the district judge did is exactly what Judge Smith suggested the district judge should do. Immediately upon hearing that there was a problem or some – some alleged problems concerning the jurors, the district judge brought all the parties in, came up with a plan, interviewed every juror one by one, asking them very targeted questions. During the break, did you hear X or Y or Z? At that point, in that process, the district judge learned from Juror Villa that he had heard some jurors, which were later determined to be jurors McCullough and Califf, making some conversations at a different part. And the district judge did exactly what I submit that this Court asks district judges to do, that she continued to look into the matter. It was – it was that series of conversations, the conversations between McCullough and Califf and Juror Osiello that related to the concerns regarding Juror McCullough. With respect to the legal issues, we absolutely agree with Judge Smith on the standard. It is an – not only an abuse of discretion, but an extremely deferential standard, as this Court and the Supreme Court have recommended. And what – what this Court and the Supreme Court have asked of district judges is for them to treat these concerns seriously when they come up, hold a hearing if necessary, and then make specific findings on the record. And that, we submit, is exactly what Judge Armstrong did. She interviewed Juror Mason, she had two juror colloquy rounds, and she made specific findings on the records. With respect to Juror McCullough, because we submit that's really what this case comes down to, there was no indications of either actual bias or implied bias. Juror McCullough legitimately was confused because of the specificity in the indictment. We respond to Mr. Walker's earlier argument concerning her use of the word facts. First, we note that in the Supreme Court decision in McDonough, the Supreme Court noted that jurors are generally not presumed to have the kind of factual understanding of the legal language that we use as lawyers and you use as judges. But specifically, I note that on Excerpt of Record 226, Juror McCullough, in her colloquy with the district judge, had already come to understand that there was a difference between what was already done and what was accused of. She makes, on her own, the distinction between initially believing that the indictment was a recitation of things that, quote, had been done and later understanding that, in fact, Mr. Walker was simply accused of those things. That was a statement and an understanding that Juror McCullough had come to herself. We submit that under the cases that have been cited in the brief, there was no indication that the briefs, Juror McCullough was not, did not have any actual bias. We also submit that there's no basis to imply any bias based on Juror McCullough's background or relationship. Similarly, under the cumulative error standard, there first has to be error, and we submit that although there were some irregularities in the first hour or so, a jury voir dire, none of those are the kind of issues, even assuming that they were error, which the government submits that they were not. Certainly, a couple of jurors going to the restroom during the first hour of jury voir dire and the failure to admonish the jury during that first hour and a half, even under the Richardson case, which Mr. Walker cites, is insufficient to reverse the convictions. If the Court has any questions, I'm happy to deal with them otherwise. Thank you very much. Given my deficit, counsel mentions irregularities, but the bottom line is that Mr. Walker is entitled to a fair trial. He's entitled to a fair jury selection, comport with due process of law. When a judge fails to admonish the juror, not to make judgments, not to talk among themselves about the facts of the case, and then they go out and do it, and then talk about, you know, this case being a slam dunk, no matter who they talk to, they were talking among themselves. You want a legal proposition as a matter of law. Well, as U.S. v. Richardson talks about, you know, whether it's error to not repeat the admonition. In this case, there was no admonition at first. So that would be error under the standard articulated by U.S. v. Richardson. But the admonition has to be given. We don't have a lot of cases that talk about that because it's always given. It wasn't given in this case, and that led to the improper actions by these jurors, eventually leading to the seating of McCullough, which we contend, based on this record, was biased. But even if we, if this Court were to say, well, it's a close case and we're going to give deference to the district court judge, there's no deference that should be given regarding these other errors. And cumulatively, they denied Mr. Walker a fair trial. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Hernandez v. Lamarck.
judges: Schroeder, Smith, Walker